1 | JEREMIAH REYNOLDS (SBN 223554)
jreynolds@eisnerlaw.com
2 | EISNER, LLP
433 N. Camden Dr., 4th Floor
3 | Beverly Hills, California 90210
Telephone: (310) 855-3200
4 | Facsimile: (310) 855-3201

5 | Attorneys for Plaintiff
Sébastien Julien Alfred Graux

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SÉBASTIEN JULIEN ALFRED GRAUX,, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **COPYRIGHT INFRINGEMENT** |
| UNIVERSAL MUSIC GROUP, INC., ICON MUSIC S A S, SALOMÓN VILLADA HOYOS p/k/a FEID and FERXXO, ALEJANDRO RAMÍREZ SUÁREZ p/k/a SKY ROMPIENDO, and JOHAN ESTEBAN ESPINOSA CUERVO p/k/a JOWAN | **DEMAND FOR TRIAL BY JURY** |
| Defendants. | |

EISNER, LLP

2870179

Plaintiff Sébastien Julien Alfred Graux ("Plaintiff" or "Graux") for his complaint against defendants Universal Music Group, Inc. ("Universal"), Icon Music S A S ("Icon"), Salomón Villada Hoyos, professionally known as Feid or Ferxxo ("Feid"), Alejandro Ramírez Suárez, professionally known as Sky Rompiendo ("Sky"), and Johan Esteban Espinosa Cuervo, professionally known as Jowan ("Jowan") (collectively "Defendants") allege as follows:

## INTRODUCTION

1. Plaintiff Graux is a grammy nominated singer-songwriter and producer. Graux made a name for himself in the music industry selling his guitar loops for use in songs by legendary artists such as Ricky Martin, Farruko, Rema, Don Toliver, NBA YoungBoy, and Booba.

2. In September 2021, Graux went on a business trip to Colombia. During his time in Colombia, Graux connected with the team at Defendant Icon. Shortly thereafter, Graux traveled to Miami, Florida and met one of Icon's producers, Defendant Jowan. After meeting Jowan, Graux provided the producer with access to several audio files containing his copyrighted works.

3. Several months later, Jowan revealed that he used three of Graux's copyrighted works in three songs on Feid's then upcoming album. Graux was ecstatic at the opportunity to be featured on these songs and looked forward to receiving a producer credit for his contributions to the songs' melody and overall composition.

4. However, despite months of reassurances from Jowan and others associated with Defendants that Graux would be credited and compensated appropriately for his contributions, Plaintiff still has not been paid at all for or properly credited on *Ferxxo 100*, *X20X*, and *De Tanto Chimbiar*. These false reassurances, upon information and belief, were merely guises to ensure that Graux did not upset the release schedule for the songs and so that Defendants could avoid their obligations with regard to Graux's copyrighted contributions to these hit songs.

5. Notwithstanding Defendants' willful infringement and broken promises,

Graux attempted to resolve this dispute outside of litigation. However, those attempts were wholly unsuccessful, necessitating the present action.

6. To date each of the three infringing songs have been sold and streamed on all major music and streaming platforms, including Spotify, Pandora, and Apple Music/iTunes. Some or all of the infringing songs were also performed on tour at the Ferxxo Nitro Jam Underground Tour and will likely be performed extensively on the FerxxoCalispsis Tour that launched on April 24, 2024.

7. Graux now seeks to right Defendants' willful taking of his intellectual property by being properly credited on the songs and for damages stemming from Defendants' flagrant and purposeful infringement.

## THE PARTIES

8. Plaintiff Sébastien Julien Alfred Graux is an individual and citizen of Belgium.

9. Defendant Universal is a Delaware corporation with its principal place of business located in Santa Monica, California. Defendant Universal at all times acted through its Universal Music Latin Entertainment division ("UMLE"). Plaintiff is informed and believes, and on that basis alleges, that UMLE is not a separately registered corporate entity.

10. Defendant Icon is a Colombian corporation with its principal place of business located in Envigado, Antioquia, Colombia.

11. Defendant Feid is an individual and also known as Ferxxo. Plaintiff is informed and believes, and on that basis alleges, that Defendant Feid is a citizen of Colombia.

12. Defendant Sky Rompiendo is an individual. Plaintiff is informed and believes, and on that basis alleges, that Defendant Sky is a citizen of Colombia and resident of Miami, Florida.

13. Defendant Jowan is an individual. Plaintiff is informed and believes, and on that basis alleges, that Defendant Jowan is a citizen of Colombia and representative

of Defendant Icon.

## JURISDICTION AND VENUE

14. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (granting jurisdiction over copyright actions).

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) as this court has personal jurisdiction over each defendant and the defendants are citizens of different states and there is no single judicial district where a substantial part of the events giving rise to the claims occurred.

16. Defendant Universal is a Delaware corporation which maintains its headquarters and principal place of business in Santa Monica, California and is therefore subject to the jurisdiction of this court. Further, UMLE, the particular division of Universal involved in this dispute, is also headquartered in Hollywood, California.

17. This court further has jurisdiction over Icon and the individual defendants pursuant to California's long-arm jurisdiction statute as these defendants transact substantial business in this judicial district, including sales of the songs at issue in this case. *See* Cal. Code Civ. P. § 410.10.

18. Further, there are no due process concerns with this court exercising jurisdiction as defendants each contributed to the sale of the offending songs over the internet, including within this judicial district, such that Defendants reasonably should have known they could be haled into this forum. Additionally, Defendants caused the infringing songs to be performed within this judicial district on two of Defendant Feid's tours as on April 27, 2023 Ferxxo Nitro Jam Underground Tour came to the YouTube Theater in Los Angeles, California and on April 27, 2024 the FerxxoCalispsis Tour came to the Kia Forum in Los Angeles, California.

## THE REGISTERED WORKS AND INFRINGING SONGS

19. Plaintiff Graux is the sole author and owner of the copyright in the sound

recording of the work titled *GRAUX Sad Crab G#min 81 (Demo)* ("*Sad Crab*"). *Sad Crab*'s sound recording copyright bears the registration number SR 995-872. Plaintiff Graux is also the sole author and owner of the copyright in the music composition of *Sad Crab*. *Sad Crab*'s music composition copyright bears the registration number PA 2-466-780.

20. On or about June 1, 2022, Defendant Universal released Defendant Feid's song titled *Ferxxo 100*. Defendants' song, *Ferxxo 100*, directly samples Plaintiff Graux's copyrighted sound recording of *Sad Crab* with very limited changes. Defendants did not have permission to use *Sad Crab* without compensating Plaintiff. Defendants, therefore, have infringed upon both the copyright in the sound recording and music composition of *Sad Crab.*

21. Plaintiff Graux is the sole author and owner of the sound recording copyright in the work titled *GRAUX Angels F#min 89 (Demo)* ("*Angel*"). *Angel*'s sound recording copyright bears the registration number SR 998-150. Plaintiff Graux also is the sole author and owner of the copyright in the music composition of *Angel*. *Angel*'s music composition copyright bears the registration number PA 2-466-303.

22. On or about September 1, 2022, Defendant Universal released Defendant Feid's song titled *De Tanto Chimbiar*. Defendants' song, *De Tanto Chimbiar*, directly samples Plaintiff Graux's copyrighted sound recording of *Angel*. Defendants did not have permission to use *Angel* without compensating Plaintiff. Defendants, therefore, have infringed upon both the copyright in the sound recording and music composition of *Angel*.

23. Plaintiff Graux is the sole author and owner of the copyright in the sound recording of the work *GRAUX San Jaun Gmin 86 (Demo)* ("*San Juan*"). *San Juan*'s sound recording copyright bears the registration number SR 995-811. Plaintiff Graux is also the sole author and owner of the copyright in music composition of *San Juan*. *San Juan*'s music composition copyright bears the registration number PA 2-470-499.

24. On or about September 14, 2022, Defendant Universal released

Defendant Feid's song titled *X20X*. Defendants' song, *X20X,* directly samples Plaintiff Graux's copyrighted sound recording of *San Juan*. Defendants did not have permission to use *San Juan* without compensating Plaintiff. Defendants, therefore, have infringed upon both the copyright in the sound recording and music composition of *San Juan*.

25. Prior to providing access to Defendants, *Sad Crab*, *Angel*, and *San Juan* were published on Graux's website.

26. The songs *Ferxxo 100*, *X20X*, and *De Tanto Chimbiar* were produced by Defendants Icon, Feid, Sky, and Jowan, performed by Defendant Feid, and released by Defendant Universal.

**GENERAL ALLEGATIONS**

27. Plaintiff Graux is a recording artist known for writing and producing guitar loops for use in music releases for other artists. Graux's guitar loops have been used to great success in the works of well-known artists such as Ricky Martin, Farruko, Rema, Don Toliver, NBA YoungBoy, and Booba.

28. From September 2021 through September 2022, Graux would meet and collaborate with the creative team behind the songs *Ferxxo 100*, *X20X*, and *De Tanto Chimbiar*. Graux's collaboration with this creative team and provision of his copyrighted guitar loops *Sad Crab*, *Angel*, and *San Juan* would lead to these songs' creation. Graux provided his copyrighted work and allowed it to be used in these songs with the expectation he would be credited as a co-producer and composer, and also be compensated for his valuable creative contributions.

29. Unfortunately, by September 2022, Graux came to understand that the creative team and record label was not interested in providing him with the full credit and compensation that he deserved. When Graux took steps to protect his intellectual property, creative interests, and career the relationship with the team soured leading to this action.

## I. Graux Meets Icon and Jowan

30. In September 2021, Graux took a business trip to Colombia during which he met with the team at Defendant Icon. Icon is a Colombian music producing company.

31. After this meeting, on October 3, 2021, Graux met Defendant Jowan, and Icon producer, while visiting Miami, Florida. Jowan and Graux exchanged contact information during this initial meeting.

32. Shortly thereafter, Graux sent via text message different audio files containing his copyrighted musical works. Graux understood that in sending these works to Jowan they might collaborate and co-produce music together using the works transmitted.

33. Months later, in February 2022, Graux went on a second business trip to Icon's studio in Medellin, Colombia. While at the studio, Graux learned directly from Jowan that three of Graux's works – *Sad Crab, Angel,* and *San Juan* – were going to be used in three upcoming Feid song releases. Graux was excited that his work was going to be part of these new releases and was looking forward to being credited on these songs as a co-producer/composer and receiving a royalty split for his contributions to the songs' melodies and any direct samples of his sound recordings.

## II. Graux Meets Sky and Attempts a Second Collaboration

34. After meeting with Icon in Colombia, Graux contacted music producer Sky Rompiendo via Instagram, as Sky worked with the Icon producing team. Sky is also one of the producers on the three infringing songs at issue. In reply, Sky wrote "send me a pack! Of guitar loops." Graux then provided Sky a Dropbox link to his guitar loops.

35. During this same exchange, Sky and Graux discussed collaborating together and Graux receiving a "co prod" or co-producer credit on the works they created as a result of that collaboration. Thus, like Jowan, at all relevant times Sky was aware of and acceded to Graux's desire to be listed as a co-producer on the songs

he co-created.

36. On January 31, 2022, Sky messaged Graux via Whatsapp regarding Graux changing his itinerary for a trip to Miami, Florida to enable Graux to collaborate in studio with Sky and an artist named BADGYAL.

37. After this collaboration, Graux sent Sky an audio file with music on February 7, 2022. Sky replied "Im interested in working w you. I'll hit you when I get back." Graux asks if Sky had any upcoming work in Miami that would allow him to extend his trip, to which Sky replied affirmatively.

38. Several days later, on February 13, 2022, Graux sent Sky another Dropbox link containing a "guitar track for Julieta." The two then made plans to have lunch the next day via text message. At this lunch, Graux and Sky discussed formalizing their collaboration. Sky agreed to send a collaboration agreement for Graux and his team's review.

39. During this trip to Miami, Graux learned that Feid would be having a concert. Having only recently learned that his three tracks were being used on three upcoming Feid songs, Graux was eager to meet with Feid, if possible. To that end, Graux asked Sky for help to "make sure I can go see Ferxxo show backstage tomorrow" as he heard "there were three songs on the album" that included Graux's guitar loops. Graux stated he wanted to "see the show, meet him, talk, have a vibe. What did you think? It seems weird to you."

40. On February 28, 2022, Graux sent Sky a voice note letting Sky know that he met with Feid backstage. Graux then informed Sky that he would be available to collaborate further together in the near future.

### III.  The Release of *Ferxxo 100* and Issues Develop

41. Several months later, Graux sought an update on the status of the Feid songs using his works. Thus, on May 7, 2022, Graux texted Jowan "How are you? How is ferxxo project coming together?" Jowan did not respond.

42. Weeks later, on May 20, 2022, Jowan messaged Graux that *Ferxxo 100*

is going to be released in three weeks. Five days later, Jowan followed up with Graux requesting information for registration of the song. Graux replied that his "Producer/composer credit should appear as: 'Sébastien GRAUX' or 'GRAUX.'" Jowan does not object to use of "Producer/composer" in this exchange – once again demonstrating a clear awareness on the part of Defendants that Graux sought such a credit for use of his works in the songs.

43. Shortly after the release of *Ferxxo 100*, and while Graux was traveling in Europe, Jowan contacted him regarding an issue with the credits on the song. Jowan informed Graux that Graux had been mistakenly left out of the song's credits. The producer further reassured Graux that he would work to correct the credit error and that while a royalty split had not been signed, that Graux would be receiving a 10% split in the song. Not suspecting any impropriety yet, Graux thanked Jowan for keeping him informed and working to correct the error. Thinking the errors would soon be corrected, Graux then told Jowan to calm down and celebrate the song's release. Jowan ended the conversation by thanking Graux for contributing his talent to the song.

44. Upon information and belief, Defendants had no intention of giving Graux a co-producer credit or a 10% split, as promised by Jowan, and Jowan's statements were meant to placate Graux to avoid any delays to the song and album release schedule.

45. Excited about the song's release and wanting to help make it a success, Graux messaged Jowan, on June 4, 2022, requesting to be tagged in an Instagram post by Feid regarding the song's release. Graux then requested artwork for the song so that he could use it in promotion for the song. Jowan did not reply to these requests.

46. On June 14, 2022, Jowan messaged Graux an apology that Spotify was taking longer than expected to organize the credits for *Ferxxo 100*. Graux again requests to be tagged again in any content related to the song's release so that he can promote it. Jowan again did not respond to this request.

47. On June 30, 2022 – over a month after the initial release of *Ferxxo 100* – Graux messaged Jowan requesting an update regarding compensation for the song. Jowan responded, again likely in an attempt to merely reassure Graux, that he is also waiting to sign a split agreement.

48. Almost a month later, Jowan wrote to Graux that the record label is disorganized and has not yet arranged for the splits. Jowan then noted would put pressure on the record label to resolve the issues of credits and split royalties. Graux thanked Jowan for keeping him informed.

49. On August 17, 2022, Graux texted Jowan asking for an update on the splits. Jowan replied the next day stating that he will provide the splits once they are ready and that the record label was working on fixing the credit issues occurring at Spotify.

### IV.     The Collaboration Agreement with Sky and Further Red Flags Emerge

50. While Jowan was continually reassuring Graux that the lack of credit and compensation were merely oversights that would soon be fixed, Graux continued discussions regarding formalizing his collaborative relationship with Sky.

51. During these discussions, Graux, on August 1, 2022, Graux messaged Sky asking, "Could you help me with the credit on Ferxxo100 that is still not fixed by any chance." Sky replied "My brother how are you. That will have to do with your lawyer my brother. I didn't put you in the song so I don't know how things were done. I'm just part of it."

52. Later that month, Graux received a proposal, dated August 15, 2022, from Sky's company, Black Koi Entertainment, LLC, regarding a publishing deal.

53. Graux circulated this proposal to his management team for their review. The conclusion of Graux's management team was that this was one of the least favorable proposals they have ever received. Graux's discovery that the proposal was extremely unsatisfactory coupled with the severe delays in receiving credit and compensation for his work led him to understand that he was being taken advantage

of by the creative team behind the three infringing songs.

54. Upon Graux's rejection of the proposal his relationship with Sky soured. From Graux's perspective as he began to protect his interests and push back on being taken advantage of by Jowan and Sky, they became increasingly distant.

55. Overtime, it became clear to Graux that Defendants did not have any intention of freely giving him the credit and compensation he deserved. As such, Graux asked his management team to get involved before the release of the second song using his work, *De Tanto Chimbiar*, so that hopefully they could avoid any further issues involving credits and compensation.

## V. The Release of *De Tanto Chimbiar* and the Continuing Split Dispute

56. Soon after Graux's management got involved in the negotiations, on September 1, 2022 – the very day that *De Tanto Chimbiar* was set to release – representatives of Feid and Universal emailed Graux's team to finally propose terms of a split for both *Ferxxo 100* and *De Tanto Chimbiar*. In this proposal, Graux was to receive one-time payments of $1000, a songwriting credit, and author royalties. However, Graux would not receive any master points or producer credit under the proposal. Feid's representatives also noted that a co-producer credit was not possible as Jowan and Icon served as producer of the songs.

57. Rodrigo Prichard of Universal then asked if they had agreement on material terms so they could move forward with releasing the song later that night.

58. Alex Hartnett, on behalf of Graux, noted that Graux was a team player and would not hold-up the release of the song. However, he proposed his own counter terms to the split proposal. These counter terms included: listing Graux's full name in the credits, a 10% composer split (with execution of a signed mechanical use license), and to continue negotiating towards a 1% royalty as co-producer. These counter terms were very similar to the terms Jowan represented to Graux that he was working toward achieving with the record label.

59. Throughout the day Jowan also frantically messaged Graux asking him

to call him to discuss the now urgent split issue so that the release of the song would not be jeopardized. Jowan also called Graux several times that day, however, Graux was traveling and could not answer.

60. Jowan in these messages noted that they could not stop the release of the song and that the split was ready for Graux to sign and that he was listed in the credits. However, the deal and credits that Defendants were urgently pushing on Graux to not jeopardize their own song release – an emergency of their own creation – were not the same as agreed or promised.

61. On September 14, 2022, Defendants released *X20X* which also directly incorporated Graux's copyrighted work. Graux did not receive proper crediting or any compensation associated with this song either.

62. On October 31, 2022, Elizabeth Munera, Ferxxo's representative, sent over another split proposal for the now three songs that used Graux's copyrighted works. Ms. Munera wrote "We appreciate your help signing them to be able to keep rolling the split to the next writer and finally register it."

63. On behalf of Graux, Mr. Harnett rejected the proposal noting that without reaching terms on all aspects of the deal, which were still outstanding with Feid's attorneys, Graux would not be signing the split proposal as proposed.

**VI. Further Attempts at Resolution Fail**

64. Almost a year later, attempts at resolving the open issues on credits, splits, and royalties were still unsuccessful.

65. On August 23, 2023, Mr. Prichard of Universal requested that the various lawyers for Feid and the producers work to resolve the issues as Graux's representatives had voiced his right to issue a takedown notice given the lack of progress at achieving a resolution for over a year.

66. On September 5, 2023, with the issues still not resolved, Graux, through his counsel Lucas Villalobos, issued a cease-and-desist letter with regard to the three songs containing Graux's copyrighted work.

67. Throughout September and October 2023, various solutions were discussed among the legal and business representatives of the parties. However, to date no resolution has been reached.

68. To date, the songs are still available commercially for both sale and streaming on all major music platform. Further, some or all of the songs have been performed on Feid's Ferxxo Nitro Jam Underground and FerxxoCalispsis Tours. Thus, Defendants have and continue to profit off of the infringement of Graux's copyrighted guitar loops that are each directly incorporated into the infringing songs.

69. To date, Graux has not received any compensation for Defendants' willful infringement of his work, despite the now years of promises that he will receive such compensation. Similarly, while appearing partially on some credits, to date, Graux has not been fully credited for each of the songs and was not provided a co-producer credit as promised.

## FIRST CAUSE OF ACTION
## Copyright Infringement – *Ferxxo 100*

70. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 69, inclusive, as though set forth in full.

71. Plaintiff is the sole author and owner of the registered music composition and sound recording copyrights in the work *Sad Crab*.

72. Defendants had access to *Sad Crab* as Plaintiff provided Defendants with access to the sound recording of the song during their collaboration.

73. Defendants incorporated the sound recording of *Sad Crab* directly into the song *Ferxxo 100*. Defendants have not compensated Plaintiff for use of either the sound recording or the music composition of *Sad Crab*. Defendants have also not properly credited Graux for his contributions to the song *Ferxxo 100*.

74. Defendants, despite not paying Plaintiff or agreeing to payment or credit terms, released *Ferxxo 100* on or about June 1, 2022. Defendants have made the song commercially available on major streaming and music purchase platforms and

performed the song on tour deriving substantial revenues.

75. Defendants use of the sound recording and music composition without payment or credit is infringement. Plaintiff has been harmed both through the deprivation of the profit stemming from use of his copyrighted works used in *Ferxxo 100*. Further, Defendants actions have directly harmed the market for Plaintiff's works, as he no longer can commercially exploit *Sad Crab* for use in another song due to Defendants' commercial exploitation of the work.

76. Plaintiff is entitled to recover from Defendants the full damages he sustained due to this willful infringement, in an amount to be proved at trial, including disgorgement of any gains or profits from the sale or commercial exploitation of *Ferxxo 100* that results from any infringement of *Sad Crab*. In the alternative, Plaintiff is entitled to statutory damages, to the extent available, for willful infringement of the copyrighted works.

## SECOND CAUSE OF ACTION
## Copyright Infringement – *De Tanto Chimbiar*

77. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 76, inclusive, as though set forth in full.

78. Plaintiff is the sole author and owner of the registered music composition and sound recording copyrights in the work *Angel*.

79. Defendants had access to *Angel* as Plaintiff provided Defendants with access to the sound recording of the song during their collaboration.

80. Defendants incorporated the sound recording of *Angel* directly into the song *De Tanto Chimbiar*. Defendants have not compensated Plaintiff for use of either the sound recording or the music composition of *Angel*. Defendants have also not properly credited Graux for his contributions to the song *De Tanto Chimbiar*.

81. Defendants, despite not paying Plaintiff or agreeing to payment or credit terms, released *De Tanto Chimbiar* on or about September 1, 2022. Defendants have made the song commercially available on major streaming and music purchase

1 platforms and performed the song on tour deriving substantial revenues.

2   82.   Defendants use of the sound recording and music composition without payment or credit is infringement. Plaintiff has been harmed both through the deprivation of the profit stemming from use of his copyrighted works in *De Tanto Chimbiar*. Further, Defendants actions have directly harmed the market for Plaintiff's works, as he no longer can commercially exploit *Angel* for use in another song due to Defendants' commercial exploitation of the work.

  83.   Plaintiff is entitled to recover from Defendants the full damages he sustained due to this willful infringement, in an amount to be proved at trial, including disgorgement of any gains or profits from the sale or commercial exploitation of *De Tanto Chimbiar* that results from any infringement of *Angel*. In the alternative, Plaintiff is entitled to statutory damages, to the extent available, for willful infringement of the copyrighted works.

## THIRD CAUSE OF ACTION
## Copyright Infringement – *X20X*
### (Plaintiff Against Defendants)

  84.   Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 83, inclusive, as though set forth in full.

  85.   Plaintiff Graux is the sole author and owner of the registered music composition and sound recording copyrights in the work *San Juan*.

  86.   Defendants had access to *San Juan* as Plaintiff provided them with access to the sound recording of the song during their collaboration.

  87.   Defendants incorporated the sound recording of *San Juan* directly into the song *X20X*. Defendants have not compensated Plaintiff for use of either the sound recording or the music composition of *San Juan*. Defendants have also not properly credited Graux for his contributions to the song *X20X*.

  88.   Defendants, despite not paying Plaintiff or agreeing to payment or credit terms, released *X20X* on or about September 14, 2022. Defendants have made the

song commercially available on major streaming and music purchase platforms and performed the song on tour deriving substantial revenues.

89. Defendants use of the sound recording and music composition without payment or credit is infringement. Plaintiff has been harmed both through the deprivation of the profit stemming from use of his copyrighted works in *X20X*. Further, Defendants actions have directly harmed the market for Plaintiff's works, as he no longer can commercially exploit *San Juan* for use in another song due to Defendants' commercial exploitation of the work.

90. Plaintiff is entitled to recover from Defendants the full damages he sustained due to this willful infringement, in an amount to be proved at trial, including disgorgement of any gains or profits from the sale or commercial exploitation of *X20X* that results from any infringement of *San Juan*. In the alternative, Plaintiff is entitled to statutory damages, to the extent available, for willful infringement of the copyrighted works.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For actual and compensatory damages in an amount to be proven at trial;

2. In the alternative, statutory damages for copyright infringement and any enhancements for willful infringement;

3. For an order requiring Defendants to properly list Plaintiff as co-producer on each of the infringing works: *Ferxxo 100*, *De Tanto Chimbiar*, and *X20X*;

4. For attorneys' fees and costs as permitted by applicable law;

5. For pre-judgment and post-judgment interest at the maximum legal rate; and

6. For such other and further relief as the Court may deem just and proper.

DATED: June 10, 2024    EISNER, LLP

By: */s/ Jeremiah Reynolds*
 JEREMIAH REYNOLDS
 Attorneys for Plaintiff
 Sébastien Julien Alfred Graux

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action triable by a jury.

DATED: June 10, 2024    EISNER, LLP

By: */s/ Jeremiah Reynolds*
 JEREMIAH REYNOLDS
 Attorneys for Plaintiff
 Sébastien Julien Alfred Graux