1  JEREMIAH REYNOLDS (SBN 223554)
   jreynolds@eisnerlaw.com
2  BENJAMIN KASSIS (SBN 298844)
   bkassis@eisnerlaw.com
3  EISNER, LLP
   433 N. Camden Dr., 4th Floor
4  Beverly Hills, California 90210
   Telephone: (310) 855-3200
5  Facsimile: (310) 855-3201

6  Attorneys for Plaintiff
   Sébastien Julien Alfred Graux

7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| SÉBASTIEN JULIEN ALFRED GRAUX, | Case No. 24-cv-04887 |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | **COPYRIGHT INFRINGEMENT** |
| UNIVERSAL MUSIC GROUP, INC., UMG RECORDINGS, INC., ICON MUSIC S A S, SALOMÓN VILLADA HOYOS p/k/a FEID and FERXXO, ALEJANDRO RAMÍREZ SUÁREZ p/k/a SKY ROMPIENDO, and JOHAN ESTEBAN ESPINOSA CUERVO p/k/a JOWAN | **DEMAND FOR TRIAL BY JURY** |
| | Action Filed:        June 10, 2024 |
| Defendants. | |

20

21

22

23

24

25

26

27

28

EISNER, LLP

                                    1
                              COMPLAINT

Plaintiff Sébastien Julien Alfred Graux ("Plaintiff" or "Graux") for his First Amended Complaint against defendants Universal Music Group, Inc. ("Universal"), UMG Recordings, Inc. ("UMG"), Icon Music S A S ("Icon"), Salomón Villada Hoyos, professionally known as Feid or Ferxxo ("Feid"), Alejandro Ramírez Suárez, professionally known as Sky Rompiendo ("Sky"), and Johan Esteban Espinosa Cuervo, professionally known as Jowan ("Jowan") (collectively "Defendants") allege as follows:

## INTRODUCTION

1.     Plaintiff Graux is a grammy nominated singer-songwriter and producer. Graux made a name for himself in the music industry selling his guitar loops for use in songs by legendary artists such as Ricky Martin, Farruko, Rema, Don Toliver, NBA YoungBoy, and Booba.

2.     In September 2021, Graux went on a business trip to Colombia. During his time in Colombia, Graux connected with the team at Defendant Icon. Shortly thereafter, Graux traveled to Miami, Florida and met one of Icon's producers, Defendant Jowan. After meeting Jowan, Graux provided the producer with access to several audio files containing his copyrighted works.

3.     Several months later, Jowan revealed that he used three of Graux's copyrighted works in three songs on Feid's then upcoming album. Graux was ecstatic at the opportunity to be featured on these songs and looked forward to receiving a producer credit for his contributions to the songs' melody and overall composition.

4.     However, despite months of reassurances from Jowan and others associated with Defendants that Graux would be credited and compensated appropriately for his contributions, Plaintiff still has not been paid at all for or properly credited on *Ferxxo 100*, *X20X*, and *De Tanto Chimbiar*. These false reassurances, upon information and belief, were merely guises to ensure that Graux did not upset the release schedule for the songs and so that Defendants could avoid their obligations with regard to Graux's copyrighted contributions to these hit songs.

5.     Notwithstanding Defendants' willful infringement and broken promises, Graux attempted to resolve this dispute outside of litigation. However, those attempts were wholly unsuccessful, necessitating the present action.

6.     Universal and UMG released and physically and digitally distributed the songs to

EISNER, LLP

COMPLAINT

the public for streaming and purchase as singles or as a part of Feid's albums between June and September 2022. To date each of the three infringing songs have been sold and streamed on all major music and streaming platforms, including Spotify, Pandora, and Apple Music/iTunes. Some or all of the infringing songs were also performed on tour at the Ferxxo Nitro Jam Underground Tour and will likely be performed extensively on the FerxxoCalispsis Tour that launched on April 24, 2024.

7.    Graux now seeks to right Defendants' willful taking of his intellectual property by being properly credited on the songs and for damages stemming from Defendants' flagrant and purposeful infringement.

## THE PARTIES

8.    Plaintiff Sébastien Julien Alfred Graux is an individual and citizen of Belgium.

9.    Defendant UMG is a Delaware corporation with its principal place of business located in Santa Monica, California.

10.    Defendant Universal is a Delaware corporation with its principal place of business located in Santa Monica, California. Defendant Universal is the parent company of Defendant UMG.

11.    Defendants Universal and UMG at all times acted through Universal's Universal Music Latin Entertainment division ("UMLE"). Plaintiff is informed and believes, and on that basis alleges, that UMLE is not a separately registered corporate entity and is a division of Defendant Universal.

12.    Defendant Icon is a Colombian corporation with its principal place of business located in Envigado, Antioquia, Colombia.

13.    Defendant Feid is an individual and also known as Ferxxo. Plaintiff is informed and believes, and on that basis alleges, that Defendant Feid is a citizen of Colombia.

14.    Defendant Sky Rompiendo is an individual. Plaintiff is informed and believes, and on that basis alleges, that Defendant Sky is a citizen of Colombia and resident of Miami, Florida.

15.    Defendant Jowan is an individual. Plaintiff is informed and believes, and on that basis alleges, that Defendant Jowan is a citizen of Colombia and representative of Defendant Icon.

**JURISDICTION AND VENUE**

16.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (granting jurisdiction over copyright actions).

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) as this court has personal jurisdiction over each defendant, on account of their ties to the forum through their intentional action-related conduct within the forum, and the defendants are citizens of different states. Additionally, as Defendants have marketed the infringing songs nation and worldwide and have performed the songs in multiple cities across the country and world there is no single judicial district where a substantial part of the events giving rise to the claims occurred.

18.     Defendants Universal and UMG are Delaware corporations which maintain their headquarters and principal place of business in Santa Monica, California and are therefore subject to the jurisdiction of this court. Further, UMLE, the particular division of Universal and UMG involved in this dispute, is also headquartered in Hollywood, California. These California-based entities and divisions released and physically and digitally distributed each of the infringing songs for purchase and streaming nation and worldwide. Upon information and belief, a substantial number of the streams and sales of the songs occurred within this district as the Los Angeles market is a popular Latin music market.

19.     This court further has jurisdiction over Icon and the individual defendants pursuant to California's long-arm jurisdiction statute as these defendants transact substantial business in this judicial district, including sales of the songs at issue in this case. *See* Cal. Code Civ. P. § 410.10.

20.     Further, there are no due process concerns with this court exercising jurisdiction as defendants each contributed to the sale of the offending songs over the internet, including sales within the state of California and within this particular judicial district. Further, Defendants' intentional conduct related to this lawsuit provided the minimum contacts necessary such that each Defendant should have reasonably known they could be haled into this forum by Plaintiff for their infringing activities.

21.     For instance, upon information and belief, Defendants Feid, Sky, Jowan, and Icon

EISNER, LLP

4
COMPLAINT

1   contracted with Universal and/or UMG, to prepare the release of[1] and thereafter, from within the

2   forum, release and distribute the infringing songs that such Defendants wrote (save for Plaintiff's

3   significant contributions) and produced. Defendants Feid, Sky, Jowan, and Icon knowingly

4   contracted with these California-based entities and there would be no infringement but for this

5   contractual relationship.

6       22.   Additionally, Defendants, after creating, releasing, and distributing the infringing

7   songs, specifically targeted this judicial district through subsequent and fundamentally different

8   acts of infringement. In addition to sales of the songs within the judicial district, Defendants have

9   caused the infringing songs to be performed within this judicial district on multiple occasions –

10  including during at least two of Defendant Feid's tours as on April 27, 2023 *Ferxxo Nitro Jam*

11  *Underground Tour* came to the YouTube Theater in Los Angeles, California and on April 27,

12  2024 the *FerxxoCalispsis* Tour came to the Kia Forum in Los Angeles, California.

13      23.   Upon information and belief, Defendants targeted this judicial district as Los

14  Angeles is an important market for the Latin music industry – and therefore would be a lucrative

15  market for Defendants to focus their marketing, sale, and performance of their infringing works.[2]

16  Feid's history of touring in Los Angeles and California[3] generally demonstrate that Los Angeles is

---

[1] Defendants Universal's and/or UMG's reproduction of Plaintiff's works in connection with the generation of the release of the songs at issue constitutes acts on infringement.  Upon information and belief, such acts of infringement occurred within this judicial district as the releases and distribution of the infringing songs were directed by and accomplished through two forum-headquartered entities.

[2] *See* Cerys Davies, LA TIMES, *Latin music takes the lead as U.S.'s fastest-growing genre*, July 18, 2024, (noting that "Latin music's shift to the mainstream is most apparent in markets like Los Angeles. As of this writing, tracks by Latin acts occupy 16 of Apple Music's 25 most streamed songs in the region"); *see also* WIKIPEDIA, *List of Latin Grammy Award ceremony locations*, *available at*https://en.wikipedia.org/wiki/List_of_Latin_Grammy_Award_ceremony_locations (listing Los Angeles as the second-most frequent host city of the Latin Grammy Awards).

[3] Since the infringing songs were released by Universal and UMG, Feid has performed in California sixteen times – of which seven performances directly occurred in this judicial district. Feid's California tour dates account for nearly 42% of his entire scheduled tour/performance dates between October 2022 and the rest of 2024 – with this district alone representing roughly 10% of performances. Upon information and belief, each performance – and therefore each act of infringement – financially benefited each Defendant significantly. All Defendants have therefore

1  an important market that Defendants targeted through touring to increase sales and streams – and

2  thereby profits – of the infringing works within the district.

3      24.    Lastly, in addition to the acts of infringement that occurred within the district,

4  Plaintiff also suffered harm within the forum to the value of his copyrighted works. But for the

5  infringement within the forum, Plaintiff would have been able to exploit the valuable music scene

6  – and Latin music scene in particular – by selling his copyrighted works within the forum.

7      25.    Accordingly, jurisdiction and venue are proper within this judicial district as each

8  Defendant has committed intentional acts within the forum for which each has benefited

9  financially at Plaintiff's expense thereby harming Plaintiff within the forum.

10              **THE REGISTERED WORKS AND INFRINGING SONGS**

11      26.    Plaintiff Graux is the sole author and owner of the copyright in the sound recording

12  of the work titled *GRAUX Sad Crab G#min 81 (Demo)* ("*Sad Crab*"). *Sad Crab*'s sound recording

13  copyright bears the registration number SR 995-872. Plaintiff Graux is also the sole author and

14  owner of the copyright in the music composition of *Sad Crab*. *Sad Crab*'s music composition

15  copyright bears the registration number PA 2-466-780.

16      27.    On or about June 1, 2022, Defendants Universal and UMG, each a California-based

17  entity, released and distributed Defendant Feid's song titled *Ferxxo 100*. Defendants' song, *Ferxxo*

18  *100*, directly samples Plaintiff Graux's copyrighted sound recording of *Sad Crab* with very limited

19  changes. Defendants did not have permission to use *Sad Crab* without compensating Plaintiff.

20  Defendants, therefore, have infringed upon both the copyright in the sound recording and music

21  composition of *Sad Crab. Ferxxo 100*'s copyright is registered to Defendant UMG and the song

22  was released through UMLE, upon information and belief a division of Universal. *Ferxxo 100* was

23  performed by Defendant Feid and written by Defendants Feid, Sky, and Jowan (credited as

24  Salomón Villada Hoyos, Alejandro Ramírez Suárez, and Johan Esteban Espinoza). Additionally,

25  Defendants Sky and Jowan are credited as producers of the song.

26  benefited significantly at Plaintiff's expense through infringing acts occurring directly within the

27  forum. Defendants have clearly targeted this judicial district with the infringing songs because of the value of this district within the Latin music market.

28

EISNER, LLP

28.     Plaintiff Graux is the sole author and owner of the sound recording copyright in the work titled *GRAUX Angels F#min 89 (Demo)* ("*Angel*"). *Angel*'s sound recording copyright bears the registration number SR 998-150. Plaintiff Graux also is the sole author and owner of the copyright in the music composition of *Angel*. *Angel*'s music composition copyright bears the registration number PA 2-466-303.

29.     On or about September 1, 2022, Defendants Universal and UMG, each a California-based entity, released and distributed Defendant Feid's song titled *De Tanto Chimbiar*. Defendants' song, *De Tanto Chimbiar*, directly samples Plaintiff Graux's copyrighted sound recording of *Angel*. Defendants did not have permission to use *Angel* without compensating Plaintiff. Defendants, therefore, have infringed upon both the copyright in the sound recording and music composition of *Angel*. *De Tanto Chimbiar*'s copyright is registered to Defendant UMG and the song was released through UMLE, a division of Universal. *De Tanto Chimbiar* was performed by Defendant Feid and written by Defendants Feid and Jowan (credited as Salomón Villada Hoyos and Johan Esteban Espinoza Cuervo). Additionally, Defendants Jowan and Icon are credited as producers of the song.

30.     Plaintiff Graux is the sole author and owner of the copyright in the sound recording of the work *GRAUX San Jaun Gmin 86 (Demo)* ("*San Juan*"). *San Juan*'s sound recording copyright bears the registration number SR 995-811. Plaintiff Graux is also the sole author and owner of the copyright in music composition of *San Juan*. *San Juan*'s music composition copyright bears the registration number PA 2-470-499.

31.     On or about September 14, 2022, Defendants Universal and UMG, each a California-based entity, released and distributed Defendant Feid's song titled *X20X*. Defendants' song, *X20X*, directly samples Plaintiff Graux's copyrighted sound recording of *San Juan*. Defendants did not have permission to use *San Juan* without compensating Plaintiff. Defendants, therefore, have infringed upon both the copyright in the sound recording and music composition of *San Juan*. *X20X*'s copyright is registered to Defendant UMG and the song was released through UMLE, upon information and belief a division of Universal. *X20X* was performed by Defendant Feid and written by Defendants Feid, Sky, and Jowan (credited as Salomón Villada Hoyos,

1  Alejandro Ramírez Suárez, and Johan Esteban Espinoza). Additionally, Defendants Jowan and

2  Sky are credited as producers of the song (credited as Jowan and Alejandro Ramírez Suárez)

3      32.     Prior to providing access to Defendants, *Sad Crab*, *Angel*, and *San Juan* were

4  published on Graux's website.

5      33.     The songs *Ferxxo 100*, *X20X*, and *De Tanto Chimbiar* were produced by

6  Defendants Icon, Feid, Sky, and Jowan, performed by Defendant Feid, and released by Defendant

7  Universal.

8                           **GENERAL ALLEGATIONS**

9      34.     Plaintiff Graux is a recording artist known for writing and producing guitar loops

10  for use in music releases for other artists. Graux's guitar loops have been used to great success in

11  the works of well-known artists such as Ricky Martin, Farruko, Rema, Don Toliver, NBA

12  YoungBoy, and Booba.

13     35.     From September 2021 through September 2022, Graux would meet and collaborate

14  with the creative team behind the songs *Ferxxo 100*, *X20X*, and *De Tanto Chimbiar*. Graux's

15  collaboration with this creative team and provision of his copyrighted guitar loops *Sad Crab*,

16  *Angel*, and *San Juan* would lead to these songs' creation. Graux provided his copyrighted work

17  and allowed it to be used in these songs with the expectation he would be credited as a co-

18  producer and composer, and also be compensated for his valuable creative contributions.

19  However, Universal and UMG released and distributed the infringing songs without properly

20  crediting or compensating Graux for his copyrighted contributions.

21     36.     Unfortunately, by September 2022, Graux came to understand that the creative

22  team and record label was not interested in providing him with the full credit and compensation

23  that he deserved. When Graux took steps to protect his intellectual property, creative interests, and

24  career the relationship with the team soured leading to this action.

25  **I.   Graux Meets Icon and Jowan**

26     37.     In September 2021, Graux took a business trip to Colombia during which he met

27  with the team at Defendant Icon. Icon is a Colombian music producing company.

28     38.     After this meeting, on October 3, 2021, Graux met Defendant Jowan, an Icon

EISNER, LLP

8

COMPLAINT

1  producer, while visiting Miami, Florida. Jowan and Graux exchanged contact information during

2  this initial meeting.

3       39.    Shortly thereafter, Graux sent via text message different audio files containing his

4  copyrighted musical works. Graux understood that in sending these works to Jowan they might

5  collaborate and co-produce music together using the works transmitted.

6       40.    Months later, in February 2022, Graux went on a second business trip to Icon's

7  studio in Medellin, Colombia. While at the studio, Graux learned directly from Jowan that three of

8  Graux's works – *Sad Crab, Angel,* and *San Juan* – were going to be used in three upcoming Feid

9  song releases. Graux was excited that his work was going to be part of these new releases and was

10  looking forward to being credited on these songs as a co-producer/composer and receiving a

11  royalty split for his contributions to the songs' melodies and any direct samples of his sound

12  recordings.

13  **II.    Graux Meets Sky and Attempts a Second Collaboration**

14       41.    After meeting with Icon in Colombia, Graux contacted music producer Sky

15  Rompiendo via Instagram, as Sky worked with the Icon producing team. Sky is also one of the

16  producers on two of the three infringing songs at issue. In reply, Sky wrote "send me a pack! Of

17  guitar loops." Graux then provided Sky a Dropbox link to his guitar loops.

18       42.    During this same exchange, Sky and Graux discussed collaborating together and

19  Graux receiving a "co prod" or co-producer credit on the works they created as a result of that

20  collaboration. Thus, like Jowan, at all relevant times Sky was aware of and acceded to Graux's

21  desire to be listed as a co-producer on the songs he co-created.

22       43.    On January 31, 2022, Sky messaged Graux via Whatsapp regarding Graux

23  changing his itinerary for a trip to Miami, Florida to enable Graux to collaborate in studio with

24  Sky and an artist named BADGYAL.

25       44.    After this collaboration, Graux sent Sky an audio file with music on February 7,

26  2022. Sky replied "Im interested in working w you. I'll hit you when I get back." Graux asks if

27  Sky had any upcoming work in Miami that would allow him to extend his trip, to which Sky

28  replied affirmatively.

EISNER, LLP

COMPLAINT

45.    Several days later, on February 13, 2022, Graux sent Sky another Dropbox link containing a "guitar track for Julieta." The two then made plans to have lunch the next day via text message. At this lunch, Graux and Sky discussed formalizing their collaboration. Sky agreed to send a collaboration agreement for Graux and his team's review.

46.    During this trip to Miami, Graux learned that Feid would be having a concert. Having only recently learned that his three tracks were being used on three upcoming Feid songs, Graux was eager to meet with Feid, if possible. To that end, Graux asked Sky for help to "make sure I can go see Ferxxo show backstage tomorrow" as he heard "there were three songs on the album" that included Graux's guitar loops. Graux stated he wanted to "see the show, meet him, talk, have a vibe. What did you think? It seems weird to you."

47.    On February 28, 2022, Graux sent Sky a voice note letting Sky know that he met with Feid backstage. Graux then informed Sky that he would be available to collaborate further together in the near future.

**III.    The Release of *Ferxxo 100* and Issues Develop**

48.    Several months later, Graux sought an update on the status of the Feid songs using his works. Thus, on May 7, 2022, Graux texted Jowan "How are you? How is ferxxo project coming together?" Jowan did not respond.

49.    Weeks later, on May 20, 2022, Jowan messaged Graux that *Ferxxo 100* is going to be released in three weeks. Five days later, Jowan followed up with Graux requesting information for registration of the song. Graux replied that his "Producer/composer credit should appear as: 'Sébastien GRAUX' or 'GRAUX.'" Jowan does not object to use of "Producer/composer" in this exchange – once again demonstrating a clear awareness on the part of Defendants that Graux sought such a credit for use of his works in the songs.

50.    Shortly after Defendants released *Ferxxo 100* through Universal and UMG, and while Graux was traveling in Europe, Jowan contacted him regarding an issue with the credits on the song. Jowan informed Graux that Graux had been mistakenly left out of the song's credits. The producer further reassured Graux that he would work to correct the credit error and that while a royalty split had not been signed, that Graux would be receiving a 10% split in the song. Not

EISNER, LLP

COMPLAINT

1    suspecting any impropriety yet, Graux thanked Jowan for keeping him informed and working to

2    correct the error. Thinking the errors would soon be corrected, Graux then told Jowan to calm

3    down and celebrate the song's release. Jowan ended the conversation by thanking Graux for

4    contributing his talent to the song.

5      51. Upon information and belief, Defendants had no intention of giving Graux a co-

6    producer credit or a 10% split, as promised by Jowan, and Jowan's statements were meant to

7    placate Graux to avoid any delays to the song and album release schedule.

8      52. Excited about the song's release and wanting to help make it a success, Graux

9    messaged Jowan, on June 4, 2022, requesting to be tagged in an Instagram post by Feid regarding

10    the song's release. Graux then requested artwork for the song so that he could use it in promotion

11    for the song. Jowan did not reply to these requests.

12      53. On June 14, 2022, Jowan messaged Graux an apology that Spotify was taking

13    longer than expected to organize the credits for *Ferxxo 100*. Graux again requests to be tagged

14    again in any content related to the song's release so that he can promote it. Jowan again did not

15    respond to this request.

16      54. On June 30, 2022 – over a month after the initial release of *Ferxxo 100* – Graux

17    messaged Jowan requesting an update regarding compensation for the song. Jowan responded,

18    again likely in an attempt to merely reassure Graux, that he is also waiting to sign a split

19    agreement.

20      55. Almost a month later, Jowan wrote to Graux that the record label is disorganized

21    and has not yet arranged for the splits. Jowan then noted would put pressure on the record label to

22    resolve the issues of credits and split royalties. Graux thanked Jowan for keeping him informed.

23      56. On August 17, 2022, Graux texted Jowan asking for an update on the splits. Jowan

24    replied the next day stating that he will provide the splits once they are ready and that the record

25    label was working on fixing the credit issues occurring at Spotify.

26    **IV.**  **The Collaboration Agreement with Sky and Further Red Flags Emerge**

27      57. While Jowan was continually reassuring Graux that the lack of credit and

28    compensation were merely oversights that would soon be fixed, Graux continued discussions

1  regarding formalizing his collaborative relationship with Sky.

2      58.    During these discussions, Graux, on August 1, 2022, Graux messaged Sky asking,

3  "Could you help me with the credit on Ferxxo100 that is still not fixed by any chance." Sky

4  replied "My brother how are you. That will have to do with your lawyer my brother. I didn't put

5  you in the song so I don't know how things were done. I'm just part of it." Nonetheless, Sky had

6  direct creative control over two of the songs at issue as he was listed in the credits of *X20X* and

7  *Ferxxo 100* as both a writer and producer (credited as Alejandro Ramírez Suárez or Sky

8  Rompiendo). Therefore, despite his message to Graux, Sky was directly involved in the acts of

9  infringement alleged herein regarding *X20X* and *Ferxxo 100*.

10     59.    Later that month, Graux received a proposal, dated August 15, 2022, from Sky's

11 company, Black Koi Entertainment, LLC, regarding a publishing deal.

12     60.    Graux circulated this proposal to his management team for their review. The

13 conclusion of Graux's management team was that this was one of the least favorable proposals

14 they have ever received. Graux's discovery that the proposal was extremely unsatisfactory coupled

15 with the severe delays in receiving credit and compensation for his work led him to understand

16 that he was being taken advantage of by the creative team behind the three infringing songs.

17     61.    Upon Graux's rejection of the proposal his relationship with Sky soured. From

18 Graux's perspective as he began to protect his interests and push back on being taken advantage of

19 by Jowan and Sky, they became increasingly distant.

20     62.    Over time, it became clear to Graux that Defendants did not have any intention of

21 freely giving him the credit and compensation he deserved. As such, Graux asked his management

22 team to get involved before the release of the second song using his work, *De Tanto Chimbiar*, so

23 that hopefully they could avoid any further issues involving credits and compensation.

24 **V.    The Release of *De Tanto Chimbiar* and the Continuing Split Dispute**

25     63.    Soon after Graux's management got involved in the negotiations, on September 1,

26 2022 – the very day that Defendants (with the exception of Defendant Sky) were set to release *De*

27 *Tanto Chimbiar* through Universal and UMG – representatives of Feid and Universal emailed

28 Graux's team to finally propose terms of a split for both *Ferxxo 100* and *De Tanto Chimbiar*. In

EISNER, LLP

12
COMPLAINT

1  this proposal, Graux was to receive one-time payments of $1000, a songwriting credit, and author

2  royalties. However, Graux would not receive any master points or producer credit under the

3  proposal. Feid's representatives also noted that a co-producer credit was not possible as Jowan and

4  Icon served as producer of the songs.

5         64.    Rodrigo Prichard of Universal then asked if they had agreement on material terms

6  so they could move forward with releasing the song later that night.

7         65.    Alex Hartnett, on behalf of Graux, noted that Graux was a team player and would

8  not hold-up the release of the song. However, he proposed his own counter terms to the split

9  proposal. These counter terms included: listing Graux's full name in the credits, a 10% composer

10  split (with execution of a signed mechanical use license), and to continue negotiating towards a

11  1% royalty as co-producer. These counter terms were very similar to the terms Jowan represented

12  to Graux that he was working toward achieving with the record label.

13         66.    Throughout the day Jowan also frantically messaged Graux asking him to call him

14  to discuss the now urgent split issue so that the release of the song would not be jeopardized.

15  Jowan also called Graux several times that day, however, Graux was traveling and could not

16  answer.

17         67.    Jowan in these messages noted that they could not stop the release of the song and

18  that the split was ready for Graux to sign and that he was listed in the credits. However, the deal

19  and credits that Defendants were urgently pushing on Graux to not jeopardize their own song

20  release – an emergency of their own creation – were not the same as agreed or promised.

21         68.    On September 14, 2022, Defendants released *X20X* through Universal and UMG

22  which also directly incorporated Graux's copyrighted work. Graux did not receive proper crediting

23  or any compensation associated with this song either.

24         69.    On October 31, 2022, Elizabeth Munera, Ferxxo's representative, sent over another

25  split proposal for the now three songs that used Graux's copyrighted works. Ms. Munera wrote

26  "We appreciate your help signing them to be able to keep rolling the split to the next writer and

27  finally register it."

28         70.    On behalf of Graux, Mr. Harnett rejected the proposal noting that without reaching

EISNER, LLP

COMPLAINT

1    terms on all aspects of the deal, which were still outstanding with Feid's attorneys, Graux would

2    not be signing the split proposal as proposed.

3    **VI.    Further Attempts at Resolution Fail**

4        71.    Almost a year later, attempts at resolving the open issues on credits, splits, and

5    royalties were still unsuccessful.

6        72.    On August 23, 2023, Mr. Prichard of Universal requested that the various lawyers

7    for Feid and the producers work to resolve the issues as Graux's representatives had voiced his

8    right to issue a takedown notice given the lack of progress at achieving a resolution for over a

9    year.

10       73.    On September 5, 2023, with the issues still not resolved, Graux, through his

11   counsel Lucas Villalobos, issued a cease-and-desist letter with regard to the three songs containing

12   Graux's copyrighted work.

13       74.    Throughout September and October 2023, various solutions were discussed among

14   the legal and business representatives of the parties. However, to date no resolution has been

15   reached.

16       75.    To date, the songs are available commercially for both sale and streaming on all

17   major music platforms. The songs have been streamed millions of times with Ferxxo 100 racking

18   along up more than 250 million views on YouTube and 485 million streams on Spotify.  These

19   infringements would not have occurred but for the contractual relationship between Defendants

20   Feid, Sky, Jowan, and Icon and Universal/UMG. Further, some or all of the songs have been

21   performed on Feid's *Ferxxo Nitro Jam Underground* and *FerxxoCalispsis* Tours. Thus,

22   Defendants have and continue to profit off of the infringement – including directly within the

23   forum – of Graux's copyrighted guitar loops that are each directly incorporated into the infringing

24   songs.

25       76.    To date, Graux has not received any compensation for Defendants' willful

26   infringement of his work, despite the now years of promises that he will receive such

27   compensation. Similarly, while appearing partially on some credits, to date, Graux has not been

28   fully credited for each of the songs and was not provided a co-producer credit as promised.

EISNER, LLP

14

COMPLAINT

# FIRST CAUSE OF ACTION

## Copyright Infringement – *Ferxxo 100*

### (Plaintiff Against All Defendants)

77.     Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 69, inclusive, as though set forth in full.

78.     Plaintiff is the sole author and owner of the registered music composition and sound recording copyrights in the work *Sad Crab*.

79.     Defendants had access to *Sad Crab* as Plaintiff provided Defendants with access to the sound recording of the song during their collaboration.

80.     Defendants incorporated the sound recording of *Sad Crab* directly into the song *Ferxxo 100*. Defendants have not compensated Plaintiff for use of either the sound recording or the music composition of *Sad Crab*. Defendants have also not properly credited Graux for his contributions to the song *Ferxxo 100*.

81.     The copyright for *Ferxxo 100* is registered to Defendant UMG and the song was released by UMLE upon information and belief a division of Universal and UMG, which physically and digitally distributed the song. Additionally, the song was performed by Defendant Feid and written by Defendants Feid, Sky, and Jowan (credited as Salomón Villada Hoyos, Alejandro Ramírez Suárez, and Johan Esteban Espinoza). Additionally, Defendants Sky and Jowan are credited as producers of the song.

82.     Defendants, despite not paying Plaintiff or agreeing to payment or credit terms, released *Ferxxo 100* on or about June 1, 2022. Defendants have made the song commercially available on major streaming and music purchase platforms and performed the song on tour deriving substantial revenues.

83.     Defendants use of the sound recording and music composition without payment or credit is infringement. Plaintiff has been harmed through the deprivation of the profit stemming from use of his copyrighted works used in *Ferxxo 100*. Further, Defendants actions have directly harmed the market for Plaintiff's works, as he no longer can commercially exploit *Sad Crab* for use in another song due to Defendants' commercial exploitation of the work.

84.    Plaintiff is entitled to recover from Defendants the full damages he sustained due to this willful infringement, in an amount to be proved at trial, including disgorgement of any gains or profits from the sale or commercial exploitation of *Ferxxo 100* that results from any infringement of *Sad Crab*. In the alternative, Plaintiff is entitled to statutory damages, to the extent available, for willful infringement of the copyrighted works.

## SECOND CAUSE OF ACTION

### Copyright Infringement – *De Tanto Chimbiar*

**(Plaintiff Against Defendants Universal, UMG, Feid, Jowan, and Icon Music)**

85.    Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 76, inclusive, as though set forth in full.

86.    Plaintiff is the sole author and owner of the registered music composition and sound recording copyrights in the work *Angel*.

87.    Defendants had access to *Angel* as Plaintiff provided Defendants with access to the sound recording of the song during their collaboration.

88.    Defendants incorporated the sound recording of *Angel* directly into the song *De Tanto Chimbiar*. Defendants have not compensated Plaintiff for use of either the sound recording or the music composition of *Angel*. Defendants have also not properly credited Graux for his contributions to the song *De Tanto Chimbiar*.

89.    The copyright for *De Tanto Chimbiar* is registered to Defendant UMG and the song was released by UMLE a division of Universal and UMG, which physically and digitally distributed the song. The song was performed by Defendant Feid and written by Defendants Feid and Jowan (credited as Salomón Villada Hoyos, and Johan Esteban Espinoza Cuervo). Additionally, Defendants Jowan and Icon are credited as producers of the song.

90.    Defendants, despite not paying Plaintiff or agreeing to payment or credit terms, released *De Tanto Chimbiar* on or about September 1, 2022. Defendants have made the song commercially available on major streaming and music purchase platforms and performed the song on tour deriving substantial revenues.

91.    Defendants use of the sound recording and music composition without payment or

1    credit is infringement. Plaintiff has been harmed through the deprivation of the profit stemming

2    from use of his copyrighted works in *De Tanto Chimbiar*. Further, Defendants actions have

3    directly harmed the market for Plaintiff's works, as he no longer can commercially exploit *Angel*

4    for use in another song due to Defendants' commercial exploitation of the work.

5          92.    Plaintiff is entitled to recover from Defendants the full damages he sustained due to

6    this willful infringement, in an amount to be proved at trial, including disgorgement of any gains

7    or profits from the sale or commercial exploitation of *De Tanto Chimbiar* that results from any

8    infringement of *Angel*. In the alternative, Plaintiff is entitled to statutory damages, to the extent

9    available, for willful infringement of the copyrighted works.

10                              **THIRD CAUSE OF ACTION**

11                        **Copyright Infringement – *X20X***

12                         **(Plaintiff Against All Defendants)**

13         93.    Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1

14    through 83, inclusive, as though set forth in full.

15         94.    Plaintiff Graux is the sole author and owner of the registered music composition

16    and sound recording copyrights in the work *San Juan*.

17         95.    Defendants had access to *San Juan* as Plaintiff provided them with access to the

18    sound recording of the song during their collaboration.

19         96.    Defendants incorporated the sound recording of *San Juan* directly into the song

20    *X20X*. Defendants have not compensated Plaintiff for use of either the sound recording or the

21    music composition of *San Juan*. Defendants have also not properly credited Graux for his

22    contributions to the song *X20X*.

23         97.    The copyright for *X20X* is registered to Defendant UMG and the song was released

24    by UMLE upon information and belief a division of Universal and UMG, which physically and

25    digitally distributed the song. The song was performed by Defendant Feid and written by

26    Defendants Feid, Sky, and Jowan (credited as Salomón Villada Hoyos, Alejandro Ramírez Suárez,

27    and Johan Esteban Espinoza). Additionally, Defendants Jowan and Sky are credited as producers

28    of the song (credited as Jowan and Alejandro Ramírez Suárez).

EISNER, LLP

98.     Defendants, despite not paying Plaintiff or agreeing to payment or credit terms, released *X20X* on or about September 14, 2022. Defendants have made the song commercially available on major streaming and music purchase platforms and performed the song on tour deriving substantial revenues.

99.     Defendants' use of the sound recording and music composition without payment or credit is infringement. Plaintiff has been harmed through the deprivation of the profit stemming from use of his copyrighted works in *X20X*. Further, Defendants actions have directly harmed the market for Plaintiff's works, as he no longer can commercially exploit *San Juan* for use in another song due to Defendants' commercial exploitation of the work.

100.     Plaintiff is entitled to recover from Defendants the full damages he sustained due to this willful infringement, in an amount to be proved at trial, including disgorgement of any gains or profits from the sale or commercial exploitation of *X20X* that results from any infringement of *San Juan*. In the alternative, Plaintiff is entitled to statutory damages, to the extent available, for willful infringement of the copyrighted works.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For actual and compensatory damages (including profits) in an amount to be proven at trial;

2.     In the alternative, statutory damages, to the extent available, for copyright infringement and any enhancements for willful infringement;

3.     For an order requiring Defendants to properly list Plaintiff as co-producer on each of the infringing works: *Ferxxo 100*, *De Tanto Chimbiar*, and *X20X*;

4.     For attorneys' fees and costs to the extent available and as permitted by applicable law;

5.     For pre-judgment and post-judgment interest at the maximum legal rate; and

6.     For such other and further relief as the Court may deem just and proper.

EISNER, LLP

COMPLAINT

DATED:  August 26, 2024                    EISNER, LLP


By: _____
       JEREMIAH REYNOLDS
       BENJAMIN KASSIS
       Attorneys for Plaintiff
       Sébastien Julien Alfred Graux


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action triable by a jury.


DATED:  August 26, 2024                    EISNER, LLP


By: _____
       JEREMIAH REYNOLDS
       BENJAMIN KASSIS
       Attorneys for Plaintiff
       Sébastien Julien Alfred Graux